UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES | ) |
| | ) M.J. No. 20-1414-DLC |
| v. | ) |
| | ) |
| RAMON ENCARNACION FRIAS, | ) |
| | ) |
| Defendant. | ) |

**AFFIDAVIT OF KEVIN C. HERSEY**

I, Special Agent Kevin C. Hersey, being duly sworn, depose and state as follows:

1. I am a Special Agent with the DEA and have been so employed since 1989. I have been assigned to the New England Field Division since 1997. I am currently working out of the New England Field Division, New Bedford Resident Office. Prior to that, I was assigned to the New York Field Division. My primary duties at the DEA include the investigation of drug trafficking organizations ("DTOs").

2. As a DEA Special Agent, I am authorized to investigate violations of the laws of the United States, including violations of federal narcotics laws in Title 21 of the United States Code. I have received training regarding narcotics investigations while attending the Basic Agent Academy in Quantico, Virginia, and have attended additional specialized training courses in furtherance of my past and current assignments.

3. I have participated in all aspects of drug investigations, including physical surveillance, surveillance of undercover transactions, the introduction of undercover agents, the execution of search warrants, the effecting of arrests, debriefings of defendants, informants and witnesses who had personal knowledge regarding major narcotics trafficking organizations, and the court-authorized interception of communications. I have also reviewed taped conversations and telephone, financial, and drug records. Through my training and experience, I have become

familiar with the manner in which illegal drugs are imported, transported, stored, and distributed, and the methods of payment for such drugs.

4. I submit this affidavit in support of a Criminal Complaint charging Ramon ENCARNACION FRIAS with violating Title 21, United States Code, Section 846 (conspiracy to possess with intent to distribute a controlled substance).

5. I am familiar with the facts and circumstances of this investigation from my own personal participation and from oral and written reports made to me by agents of the DEA and other federal, state, and local law enforcement agencies. I have also reviewed information from a variety of additional sources, including court authorized interception of wire and electronic communications.

6. This affidavit is submitted for the limited purpose of establishing probable cause to believe that ENCARNACION FRIAS has committed the above offense. Accordingly, I have not included each and every fact known to me and other law enforcement officers involved in this investigation. I have set forth only the facts that I believe are needed to establish the requisite probable cause.

7. On October 20, 2020, law enforcement agents with the DEA went to 175 Gallup Street, Providence, Rhode Island, to execute an arrest warrant for Jesus RIVERA, who had been charged in the United States District Court for the District of Massachusetts by criminal complaint with conspiracy to possess with intent to distribute and to distribute 400 grams or more of fentanyl and 500 grams or more of cocaine, in violation of Title 21, United States Code, Section 846 (M.J. No. 20-1408-DLC). Court authorized precise location information and use of a court-authorized cell-site simulator showed that a telephone used by RIVERA was present inside of 175 Gallup Street.

8. At approximately 6:10 a.m., agents knocked on the door of 175 Gallup Street and announced their presence. A female later identified as Emilia Antonia Feliz Castillo answered the door. Feliz Castillo spoke Spanish. Agents showed Feliz Castillo a photograph of RIVERA and inquired in English whether he was inside. Feliz Castillo shrugged her shoulders and spoke in Spanish. A second female, later identified as Gederlyn Alfonisna Leon Feliz, Castillo's daughter, then came to the door. Leon Feliz also spoke Spanish. Agents showed her the photograph of RIVERA, and Leon Feliz shook her head no and shrugged her shoulders.

9. At that time, Feliz Castillo and Leon Feliz began speaking with a Spanish-speaking Task Force Officer (the "TFO"). Feliz Castillo stated in Spanish, "I don't know who that is. What's going on here?" The TFO explained that agents were there to apprehend the person depicted in the photograph, and Feliz Castillo stated, "I don't know who that is. You guys can check my apartment. That person is not here. We have nothing to hide." Feliz Castillo then stepped from in front of the door to the residence and moved her arms in a manner that signified that agents could enter the apartment.

10. Agents then entered 175 Gallup Street. While inside the apartment, agents observed a raggedly opened brick-shaped package of off-white powder on the floor of the bathroom. Agents recognized the package, which was wrapped in duct tape, as a partial kilogram of narcotics. Agents observed off-white powder in the toilet and powder caked onto push-button flusher of the toilet.

11. Based on my training and experience, I am aware that narcotics traffickers who need to quickly dispose of narcotics, oftentimes to avoid law enforcement detection, will flush the narcotics down the toilet.

12. Agents located ENCARNACION FRIAS sitting on the bed in one of the bedrooms of the apartment. ENCARNACION FRIAS had fresh cuts on this hands that were actively bleeding. Agents believed based on the cuts on ENCARNACION FRIAS's hands and the raggedly opened package on the bathroom floor that ENCARNACION FRIAS had opened the suspected kilogram of narcotics and attempted to dispose of it by flushing the contents down the toilet.

13. At that time, agents requested Feliz Castillo's written consent to search the apartment. Feliz Castillo stated to the Spanish-speaking TFO that she rented the apartment at 175 Gallup Street and paid the rent. Feliz Castillo stated that ENCARNACION FRIAS was her boyfriend and stayed at 175 Gallup Street all the time. Feliz Castillo provided written consent to search the apartment.

14. From the other two bedrooms of the apartment, agents seized drug packaging paraphernalia, scales, and what appeared to be a small quantity of packaged narcotics.

15. After ENCARNACION FRIAS had been arrested and while he was awaiting transport from 175 Gallup Street, he stated that he wanted to speak with police. A Spanish-speaking DEA Special Agent then interviewed ENCARNACION FRIAS.

16. The Spanish-speaking Special Agent reissued ENCARNACION FRIAS his Miranda warnings, which ENCARNACION FRIAS said he understood. ENCARNACION FRIAS then stated that he had resided at 175 Gallup Street with his girlfriend, Feliz Castillo, for approximately seven months. He stated that he had known RIVERA since approximately March or April 2020. ENCARNACION FRIAS stated that he had met RIVERA through a friend and allowed RIVERA to stay at 175 Gallup Street at times because a girlfriend had kicked RIVERA out of her residence. ENCARNACION FRIAS stated that RIVERA had left the suspected

kilogram of narcotics at 175 Gallup Street approximately three weeks ago and had instructed ENCARNACION FRIAS to flush it down the toilet if the police came.

17.     ENCARNACION FRIAS stated that he had previously observed RIVERA "making a cut," which agents understood to mean he had observed RIVERA processing drugs for distribution.  ENCARNACION FRIAS stated that he believed that the suspected kilogram of narcotics contained cutting agent.  Agents inquired whether ENCARNACION FRIAS understood that cutting agents were used to process drugs for distribution, and ENCARNACION FRIAS stated that he did know that.

18.     The substance seized from the bathroom of 175 Gallup Street was not field tested.  Based on my training and experience, and in particular the appearance of the package, including its shape, size, and packaging, I believe that the package seized from the bathroom of 175 Gallup Street was a partial kilogram of narcotics.

19.     Based on ENCARNACION FRIAS's admitted familiarity with drugs and cutting agents, his statement that he had previously observed RIVERA processing drugs for distribution, the distribution paraphernalia located inside of 175 Gallup Street, where ENCARNACION FRIAS resided, and the fact that RIVERA entrusted ENCARNACION FRIAS with a kilogram of narcotics for safekeeping, I believe that ENCARNACION FRIAS was not truthful with agents when he stated that he believed the package recovered from the bathroom floor contained cutting agent.  To the contrary, I believe that ENCARNACION FRIAS knowingly stored narcotics and narcotics distribution paraphernalia for RIVERA in the apartment where he resided, and that he agreed to destroy the narcotics to help RIVERA avoid police apprehension.

**Conclusion**

42.  Based upon the foregoing, there is probable cause to believe that on October 20, 2020, Ramon ENCARNACION FRIAS did conspire to possess with intent to distribute a controlled substance in violation of Title 21, United States Code, Section 846.

_____
Kevin C. Hersey
Special Agent
Drug Enforcement Administration

Sworn to by telephone in accordance with Fed. R. Crim. Pr. 4.1 on October 20, 2020,

_____
HON. DONALD L. CABELL
United States Magistrate Judge
District of Massachusetts